*280 OPINION OF THE COURT
Edward M. Horey, S.
The personal representatives of the estates of two deceased aged women have petitioned this court in separate proceedings for a determination of a claim made against each estate by the Commissioner of Social Services of Cattaraugus County, one Ronald Hackett.
In each instance the claim made by the commissioner is for recoupment of benefits paid for medical assistance to each of the decedents during their lifetime, but after each decedent attained the age of 65.
In each instance the claim of the commissioner is alleged to be based upon the provisions of section 369 (subd 1, par [b]) of the Social Services Law which provides for recoupment of medical assistance in certain instances.
Each of the two personal representatives has opposed payment upon the grounds that the provisions of section 369 (subd 1, par [b]) of the Social Services Law are unconstitutional. In particular, the personal representatives charge that a requirement of payment would represent a denial of equal protection of the laws.
There is thus presented in each proceeding an identical question of constitutionality of New York State statutes providing for Medicaid benefits. For this reason one decision is made for both proceedings.
The proceeding for the decedent, Mary Davis, is brought by her executrix, Alameta Bergamon, as petitioner.
The facts which give rise to this proceeding follow:
Mary Davis was born May 16,1902 and became 65 years of age on May 16, 1967. Because of her limited income and resources, she became eligible for medical assistance (Medicaid) through the New York State Department of Social Services.
Mary Davis died on January 12,1979. She left no surviving spouse surviving her, and no child who is under 21 years of age or is blind or permanently disabled. However, she was survived by six adult children. At the time of her death she was 76 years of age. Between September 11, 1978 and January 12,1979, the decedent, Mary Davis, was *281 furnished medical assistance by the Cattaraugus County Department of Social Services in the amount of $5,105.49.
After the death of Mary Davis, Ronald Hackett, as Commissioner of the Cattaraugus County Department of Social Services, filed a claim against the estate of Mary Davis under section 369 (subd 1, par [b]) of the Social Services Law for recovery of the $5,105.49 medical assistance furnished decedent. The estate of the decedent appears to be limited to a house trailer located in the Town of Great Valley, where she made her home. It has a value of no more than $3,500.
The executrix has rejected the claim of the commissioner and brings this proceeding by petition to determine the validity of that claim.
The proceeding for the decedent, Mary Dann, is brought by her executor, Richard C. Letson, as petitioner.
The facts which give rise to this proceeding follow:
Mary Dann was born October 6, 1910, and became 65 years of age on October 6,1975. After becoming 65 years of age, because of her limited income and resources, she was eligible for cash assistance under the Supplemental Security Income (S.S.I.) Program of the Social Security Administration. Because she was receiving S.S.I. benefits, she was eligible for medical assistance (Medicaid) through the New York State Department of Social Services.
Mary Dann died on May 29, 1978. She left no surviving spouse surviving her and no child who is under 21 years of age or is blind or permanently disabled. However, she was survived by an adult son. At the time of her death she was 67 years of age. Between February 1, 1976 and May 29, 1978 the decedent, Mary Dann, was furnished medical assistance by the Cattaraugus County Department of Social Services in the amount of $1,396.46.
After the death of Mary Dann, Ronald Hackett, as Commissioner of the Cattaraugus County Department of Social Services, filed a claim against the estate of Mary Dann under section 369 (subd 1, par [b]) of the Social Services Law for recovery of the $1,396.46 medical assistance furnished decedent. Decedent’s estate consists principally of a modest house and lot located in the Town of South Valley, *282 where she made her home, which has a value of no more than $3,200.
The executor has rejected the claim of the commissioner and brings this proceeding, by petition, to determine the validity of that claim.
The statutory enactment that is in issue in this litigation is section 369 (subd 1, par [b]) of the Social Services Law. That statute prohibits the recovery of medical assistance from any recipient with the exception of medical assistance which has been furnished recipients over the age of 65. To those over 65, who have been furnished medical assistance, recoupment is permitted from their estate in certain specified instances.
The statute in issue provides in relevant part as follows: “(b) there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under twenty-one years of age or is blind or permanently and totally disabled, provided, however, that nothing herein contained shall be construed to prohibit any adjustment or recovery for medical assistance furnished pursuant to subdivision three of section three hundred sixty-six of this chapter.” (Social Services Law, § 369, subd 1, par [b]; emphasis added.) Why it was that the Legislature in enacting section 369 (subd 1, par [b]) saw fit to make a distinction between those over 65 years of age and those under 65 years of age so far as recoupment of previously paid medical assistance presents the most vexing problem to the solution of the cases at bar.
The attorneys in this litigation have searched the point diligently. The bill jacket relating to the legislative enactment of chapter 256 of the Laws of 1966 with accompanying letters and comments has been perused. Briefs of attorneys in other pending litigation involving the same point in issue have been secured and examined. All known research facilities and materials of the Department of Social Services which touch upon the matter have been *283 reviewed. Decisional law and records on appeal in even remotely related cases have been examined. This court has researched the matter for months. In addition to the foregoing, that research included the sources of the Congressional Library. In summary, all known available sources of information have been exhausted. To date, no clearly articulated reason for the statutory enactment which provides for recoupment of medical assistance from those over the age of 65 and not from those under the age of 65 has been discovered.
Reluctantly, the court sallies forth into an area of what has proven to be one of labyrinthine complexity.
The legislative history of medical assistance does furnish some insight into the matter. That history goes back to the first Congressional enactments providing for medical assistance. Medical assistance for the aged first appeared as part of the Social Security amendments of 1960. They were embraced in what is known as the Kerr-Mills Act, being Public Law 86-778 (74 US Stat 924).
Title VI of the Kerr-Mills Act was entitled “Medical Services for the Aged”. It instituted a plan for grants to States for medical assistance to certain needy aged persons. It is important to note that under the terms of this act the only eligible recipients of medical assistance were individuals who were over the age of 65. Recoupment was permitted from the estate of those recipients (i.e., those over the age of 65) in certain limited circumstances.
The next significant development in the statutory history was the enactment of revisions to the Social Security Law by Congress in 1965. These revisions are embraced in what are commonly referred to as the “Social Security Amendments of 1965”. More precisely they were contained in Public Law 89-97 (79 US Stat 286). While these amendments included many and drastic changes in the law, the most significant for the purposes of the litigation at hand was title XIX (79 US Stat 286, 343).
Title XIX for the first time introduced a plan for Federal grants to the States for medical assistance to certain limited, specified and qualifying persons who were under the age of 65. This was in addition to continuing medical assistance for those over 65.
*284 Those persons under 65 who qualified under title XIX for medical assistance fell into four categories. They were: (1) persons under 65 who were totally and permanently disabled; (2) persons under 65 who were blind; (3) persons under 65 who as relatives received assistance for needy and dependent children, and (4) persons under the age of 65 who were also under the age of 21.
With the addition of the four groups under the age of 65 who could qualify for medical assistance, a modification of the previous existing provision authorizing recoupment of medical assistance was provided. Recoupment from the estates of those over 65 who had been furnished medical assistance was continued, but recoupment from estates of those under 65 who fell into any of the four listed categories was excluded. In brief, title XIX made a distinction, but that distinction was not between persons over 65 years and those under 65 years of age as such. Rather, it was a distinction between those over 65 years of age and those under 65 years of age who also had some special characteristic to make them objects of special sympathy and concern.
The third significant step in legislative history was the action taken by the State of New York relative to the provisions contained in title XIX of the amendments contained in Public Law 89-97 for 1965 (79 US Stat 286). Heralded as creating a new concept in medical assistance, it was enthusiastically supported by Governor Rockefeller. He promoted a broad and expanded health program for the State of New York. His program was contained in chapter 256 of the Laws of 1966 which was passed, signed into law and became effective July 6, 1966. Those provisions are now contained in article 5 (tit 11, §§ 363-369) of the Social Services Law.
At this point, two very significant notes should be made. First is the fact that the provisions for medical assistance adopted by the State of New York were expanded far beyond the categories set forth in title XIX of the Federal act. The provisions for medical assistance under the Federal act formed only a base for the springboard legislation enacted in this State. Under the terms of title 11 of article 5 of the Social Services Law as enacted, hundreds of *285 thousands of persons in addition to those provided for under title XIX were made eligible for medical assistance.
In New York State, eligibility for medical assistance was broadened to include every person who is either receiving or is eligible to receive home relief. (Social Services Law, § 366, subd 1, par [a], cl [1].) In addition, it was provided that medical assistance be given to any person who was not otherwise eligible “in the event of catastrophic illness”. (Social Services Law, § 366, subd 2, par [c].) An informative article on the early development of medical assistance in this State is contained in the Syracuse Law Review. (Werne, Medicaid: Has National Health Insurance Entered by the Back Door?, 18 Syracuse L Rev 49.)
Second and of equal if not greater significance is to note that despite the expansionist concepts of the New York legislation relative to medical assistance, the provision for recoupment from beneficiaries remained slavishly limited to recoupment provisions contained in title XIX of the Federal act.
So far as this court can determine, no one noticed, or if they did, they remained silent on the record that New York State could have enacted without any violation of title XIX a provision of law which would have permitted recoupment from the estates of all persons both over 65 years of age and under 65 years of age, except for the four categories of persons under 65 who were exempted from the recoupment under the title XIX provisions of the Federal act, viz.: (1) persons under 65 who were totally and permanently disabled; (2) persons under 65 who were blind; (3) persons under 65 who as relatives received assistance for needy and dependent children, and (4) persons under 65 who were also under the age of 21. It is clear that New York did not elect to seek recoupment from the estates of those recipients which it added to the eligibility list.
It was the servile continuance by the New York Legislature of the Federal recoupment provisions against the estates of those recipients of medical assistance who were over 65 and the failure to include similar recoupment provisions against the estates of the additional recipients of medical assistance added by the New York Legislature *286 who did not fall in the Federally determined exempt category that gives rise to the constitutional problem now before this court.
As earlier noted, no articulated reason for the distinction which is borne out of the omission to include recoupment provisions against the estates of the additionally added, but nonexempt recipients of medical assistance in section 369 (subd 1, par [b]) of the Social Services Law has been discovered. This court hazards the opinion that no clear and satisfying statement will ever be found.
In the judgment of this court the fountainhead of the problem lies solely and simply in legislative oversight. In drafting the recoupment provisions of section 369 (subd 1, par [b]) the expanded classes of nonexempt beneficiaries who were provided medical assistance by a munificent New York Legislature through its adoption of title 11 of article 5 of the Social Services Law were simply forgotten. They were not expressly exempted from recoupment provisions under the New York statute. Neither were they expressly equated to the exempt classifications which had been made by the Congress in enacting title XIX. It was simply a proposition that by providing for recoupment from those over 65 only, all other classes whether provided for by the Congress or by the New York Legislature were omitted from recoupment provisions.
This court concludes that it was mere happenstance that the classes of beneficiaries selected by the State of New York as additionally eligible recipients of Medicaid were individuals under the age of 65. Thus, in the enactment of section 369 (subd 1, par [b]) of the Social Services Law, unknowingly, they were included as exempt recipients merely by the parroting repetition of the Federal recoupment provisions contained in title XIX.
Not only has no expressed reason been discovered, neither has any intent, legitimate or otherwise, to the New York classification of Medicaid recipients exempt from recoupment and those not exempt been discovered. This court is asked now to retroactively ascribe a justification of legislative intent which it has concluded was nonexistent. It will not do so. The classifications which have been made *287 must stand or fall constitutionally in this instance on their own merits without aid or buttress of stated legislative intent or expressed reason.
Because there is such an intertwining of Congressional acts and State statutes, especially as to recoupment provisions, the closest scrutiny must be made of the constitutional issue which is presented.
The specific charge of unconstitutionality urged is that section 369 (subd 1, par [b]) of the Social Services Law results in a denial of equal protection of the law in violation of the provisions of the Fourteenth Amendment of the Federal Constitution, as they have been transposed to section 11 of article I of the New York Constitution. In particular, it is urged that section 369 (subd 1, par [b]) establishes a classification which is discriminatory and is not a proper legislative enactment.
Any analysis of an alleged conflict between a statutory enactment and the equal protection clause of either the State or Federal Constitution must begin with an identification of the groups which are alleged to be treated differently under the legislation. This is for the reason that the mandate of the equal protection clause is that ‘“all persons similarly circumstanced shall be treated alike’ ” (Matter of Patricia A., 31 NY2d 83, 88, quoting from Reed v Reed, 404 US 71, 76; emphasis added.)
Thus, a claim that one has been denied the equal protection of the laws, to be valid, must rest upon some legislative classification which treats similarly circumstanced individuals in a different way.
This court views it important to note that in examining the provisions of section 369 (subd 1, par [b]) of the Social Services Law for unconstitutionality it is only necessary to relate that section authorizing recoupment from those over 65 to those two classes of recipients of Medicaid under 65 years of age that were added by action of the New York State Legislature. In all other respects section 369 (subd 1, par [b]) relates to the Federal statute from which it was copied and to those four classes of recipients who were made eligible under the Congressional enactment of title XIX. In brief, the case at bar does not urge that the *288 recoupment provisions contained in title XIX of the Federal act are unconstitutional, but only that those contained in section 369 (subd 1, par [b]) of the Social Services Law are unconstitutional.
As we have demonstrated, except for application to the added categories of catastrophic illness and home relief, the recoupment provisions of section 369 (subd 1, par [b]) are identical to the Federal recoupment provision. Because the four classifications made in title XIX of the Federal act are narrower, more interrelated and in all likelihood adopted upon expressions of reason and intent by the Congress, they may pass constitutional muster. Suffice to say whether they do or they do not presents a separate problem which this court does not find involved in the cases at bar.
The court limits itself to the question raised; and that question as this court views it revolves around a determination of whether or not those persons over 65 years of age from whom recoupment has been authorized by the New York Legislature (Social Services Law, § 369, subd 1, par [b]) are “similarly circumstanced” to those under 65 from whom recoupment is not permitted, viz.: (1) those under 65 who are the victims of catastrophic illness (Social Services Law, §366, subd 2, par [c]), or (2) those under 65 whose resources make them eligible for home relief (Social Services Law, § 366, subd 1, par [a]).
Since the primary benefit of Medicaid is money payment by the government for medical services, an examination of the financial circumstances of the groups involved relative to eligibility for Medicaid is in order.
To those individuals under 65 who seek to qualify for medical assistance because of catastrophic illness, the New York statute imposes income restrictions on eligibility. They must have consumed 25% of their net annual income, regardless of amount, on “in-patient care, services and supplies while in a medical institution” or alternatively have currently expended for such medical costs all of their annual net income in excess of $2,256, such required expenditure being “that amount of recipient’s annual net income in excess of the applicable cash public assistance *289 eligibility level”. (See Social Services Law, § 366, subd 2, par [c]; 18 NYCRR 360.31.)
To those individuals under 65 who seek to qualify for medical assistance because their resource level makes them “eligible for home relief” there are also income restrictions imposed on qualifying. Currently, in Cattaraugus County, they may not have income in excess of $188 per month. (Social Services Law, § 366, subd 1, par [a]; § 131-a; 18 NYCRR 352.1, 352.3.)
In marked contrast to those under 65 qúalifying for Medicaid because of (1) catastrophic illness or because (2) their resource levels make them eligible for home relief, are those over 65 who qualify for such benefits. Such individuals over 65 currently may have monthly income of $301.21. (See Social Services Law, § 209, subd 2, par [a]; 18 NYCRR 360.5.)
Further, in computing the amount of income for such individual, the first $85 of earned income is disregarded if such individual has no unearned income. If such individual has unearned income then the first $20 of unearned income is disregarded and the first $65 of earned income is also disregarded. (See 18 NYCRR 360.5 [b] [2] [i], [ii].) In addition to disregarding the first $65 or $85 of earned income as may be applicable, one half of all other earned income per month is also disregarded. (18 NYCRR 360.5 [b] [2] [ii].)
In addition to the contrasting income provisions noted, there are others. Those over 65 qualifying for Medicaid can own a homestead regardless of its value. (See 18 NYCRR 360.5 [a] [1] [i].) They can have cash or other assets with a total value not to exceed $1,850. (See Social Services Law, § 366, subd 2, par [a], els [4], [8].) They can own essential personal property including an automobile with a net equity up to $4,500 in value or of unlimited value if the automobile is necessary for at least four medically related trips per year. (See 18 NYCRR 360.5 [a] [1] [ii].) Other provisions, too detailed to set forth here, authorize in certain instances the ownership of business assets or income producing property. None of the foregoing reservations of property are permitted those under 65 qualifying *290 for Medicaid by dint of catastrophic illness or eligibility for home relief.
Thus, as demonstrated, those over the age of 65 who are eligible for Medicaid are allowed to maintain not only substantially higher income than those under 65 who are eligible for Medicaid because they qualify either for catastrophic illness or home relief, but in addition those over 65 may retain and maintain substantially greater real and personal property.
A caution is noted. The figures set forth in the foregoing comparisons and the sections of law and regulations cited were checked for accuracy as of the writing of this decision. However, they appear to be subject to such constant change that some differences may have occurred even before this decision is filed. However, the changes made to date have been so modest and insubstantial, that they in no way militate against the over-all contrasts noted.
On the analysis made, the court concludes that the persons in the three groups noted are not “similarly circumstanced”. This determination alone should resolve the matter. However, it appears that other tests of inequality have been espoused in decisional law. Pressed by petitioners, they are examined.
In Matter of Lee v Smith (43 NY2d 453) our Court of Appeals was called upon to apply the principles of equality of the Fourteenth Amendment to the field of social welfare. In doing so the court set forth a test for inequality when it said (pp 460-461): “Classification of the aged, disabled and blind into a separate public assistance category with needs different from other needy persons is not unusual, nor is it usually considered discriminatory. Generally however the classification inures to their benefit and is sustained on the theory that it is not irrational for the State to conclude that the aged and disabled are least able *** to bear the hardships of an inadequate standard of living’ (Jefferson v Hackney, 406 US 535, 549). Thus if the State’s classification had also recognized their needs at a level equal to or greater than the needs of others generally, the separate treatment would find support in reason and authority.”
*291 Earlier in Alevy v Downstate Med. Center of State of N. Y. (39 NY2d 326, 332) our Court of Appeals, in an opinion by Judge Gabrielli said: “Traditional equal protection analysis is two tiered. Most classifications are subject to. the lax standard of rationality which tests whether the challenged classification bears a reasonable relationship to some legitimate legislative objective. The test has been applied with great indulgence, especially in the area of economics and social welfare where, for example, it has been said that ‘[i]f the classification has some “reasonable basis,” it does not offend the Constitution simply because the classification “is not made with mathematical nicety or because in practice it results in some inequality” ’. (Dandridge v Williams, 397 US 471, 485; see Matter of Levy, 38 NY2d 653; Matter of Figueroa v Bronstein, 38 NY2d 533; Gleason v Gleason, 26 NY2d 28; Matter of Bauch v City of New York, 21 NY2d 599.) Indeed, in actual application the rejection of classifications under this test appear to be rare.”
This court finds a reasonable basis in the classification which the Legislature has made however unknowingly it may have been done.
Those over 65 years of age are generally those who have the greatest medical needs and thus require the most medical assistance. Generally they are not a class which may reasonably be expected to be restored to full-time employment or self-support. They have reached the twilight years. This court does not find it unreasonable that they be permitted to expend those years without the fear of loss of their home and the anxiety of being rendered destitute by a grasping governmental seizure of their meagre earnings and savings. So highly does this State consider the requirements of assistance to the aged and needy, it has provided for it not by way of grace and favor, but by expression of right in our State Constitution.
Section 1 of article XVII of the New York Constitution declares “[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.”
*292 Having provided benefits to those needy aged over 65 during their lives in conformity to established State policy, this court fails to see how it becomes unreasonable for the State to recoup in part those benefits furnished from the unexpended assets of those needy aged once they are deceased. The needy aged recipient has lost nothing. The only persons who may have lost are the heirs at law or potential legatees or devisees. If disappointment over inheritance is to be the litmus paper test of unequal protection of the laws, then it would follow that a substantial percentage of all wills probated would be unconstitutional, as frustration over the legacies made by decedents paints the walls of every Surrogate Court.
It is to be recalled that recoupment provided under section 369 (subd 1, par [b]) of the Social Services Law is not one that is “carte blanche”. Recovery is permitted against the estate of the decedent recipient over 65 only if there is no spouse surviving or child surviving under 21 or who is blind or disabled. To a considerable degree then those most dependent on a deceased recipient are protected from loss of estate assets.
Further, there appears to this court to be a discernible, albeit hazy, pattern in the creation of section 369 (subd 1, par [b]) of the Social Services Law. That statute was enacted as a part of chapter 256 of the Laws of 1966. Section 18 of the very same chapter 256 of the Laws of 1966 provided significant benefits to the heirs at law of welfare recipients by dramatically changing the definition of legally responsible relatives.
Prior to April 30,1966 the husband, wife, father, mother, child of a recipient of public assistance was, if of sufficient financial ability, made responsible for the support of such person. Thus, adult children were financially responsible for a parent in need of monetary or medical assistance. The effect of the enactment of section 18 of chapter 256 of the Laws of 1966 was to relieve children of the responsibility of supporting impoverished parents.
Viewed in concert then the effect of the enactment of section 369 (subd 1, par [b]) of the Social Services Law and the amendment provided by section 18 of chapter 256 of the *293 Laws of 1966, was to provide an integrated statutory scheme, however, imperfect, that would relieve the children of a welfare recipient of any financial obligation during the lifetime of the recipient at a cost of possible loss of inheritance upon the death of that recipient. Even upon death, a surviving spouse, or infant dependent or blind or disabled children would escape any loss. Thus, in substance, only the nondependent objects of bounty of a welfare recipient would be deprived of inheritance rights. To this court this is not properly viewed as a loss to them, but rather a reasonable and relaxed quid pro quo provided by the Legislature to be paid for a deferral of their preexisting obligations of support. In the final analysis it is the nondependent heirs or legatees, rather than the taxpayers generally who must make some sacrifice for the medical care of the needy aged over 65. This court finds nothing illegal or inequitable with that social concept.
The court recognizes that there persists, nonetheless, the question “then why didn’t the Legislature provide the same recoupment provisions for those under 65 who receive medicaid?” The court has already indicated that so far as recipients who were made eligible for Medicaid by State action, viz.: those subject to catastrophic illness and those eligible for home relief, the Legislature could have provided for recoupment. As previously noted, the precise reason the Legislature did not do so has avoided detection and remains unknown. This is not an isolated incident. In that connection the Court of Appeals, speaking through Judge Wachtler has provided us with as apt an answer as is possible. In Baker v Sterling (39 NY2d 397, 406) it was said: “[T]he Legislature throughout the century has haphazardly enacted a series of statutes, couched in general terms, which were intended to carry out shifting or evolving concepts of social need. Older statutes based on policies dimly stated, unstated or later greatly modified, perhaps even abandoned, have been re-enacted and left to stand beside more recent enactments based on new, and apparently conflicting notions of social justice, some in fact imported from Federal law. Courts seeking a precise solution to a particular problem have been utterly frustrated in their efforts to discover an integrated or workable statu *294 tory scheme or a paramount legislative concern which would provide consistent guidance through the maze.”
While the considerations for recoupment from those over 65 which have been made include, at least inferentially, some explanation of the failure of the Legislature to provide for recoupment from the two groups which the Legislature added, the court offers the following additional thoughts.
It must be conceded that the most difficult cases to rationalize are (1) that involving a recipient of Medicaid because of catastrophic illness who is 64 years and 11 months of age, and (2) that involving a recipient of Medicaid by dint of eligibility for home relief who is also 64 years and 11 months of age. The observation is made that at any time thát age is made the yardstick for classification, those closest to the line of demarcation of necessity present the most troublesome problem. The Supreme Court has recognized this, especially in the area of social welfare.
In Dandridge v Williams (397 US 471, 485) it was held that if classification by age has some reasonable basis, it is not rendered unconstitutional because it “‘is not made with mathematical nicety or because in practice it results in some inequality.’”
In Idaho Dept. of Employment v Smith (434 US 100, 101) it was stated that the Supreme Court “consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits.”
In McGowan v Maryland (366 US 420, 426) it was said that: “a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.”
As has been indicated in the normal course of events, those over 65 years of age cannot reasonably be expected to return to productive wage earners. In contrast, it would appear reasonable to assume that most if not all of those under 65 who recover from catastrophic illness may reasonably be expected to return to productive lives. Similarly, it is reasonable to assume that some of those whose resources level make them presently available for home *295 relief and thus Medicaid, may in the future improve in financial status.
It has been suggested that to these two groups, in contrast to those over 65, the Legislature has adopted the philosophy of a tight shoe wherein it provides needed protection, but intentionally pinches financially enough to encourage the recipient to find a nonwelfare alternative. Whether this was or was not the legislative purpose of the classifications made for those under 65 and of the provisions relative to those classifications, it is certain that the suggested reason or others are at hand which reasonably may be conceived to justify their differences from those applicable to those over 65. While there may be some inequality, it would appear to be minimal and in any instance would result from classifications made by the Legislature. For these reasons, supported by the decisional law last noted, and’ in keeping with what is stated to be established practice in the area of social services enactments, this court will defer to the legislative determinations that have been made.
Upon the review which has been made and for all of the reasons cited, particularly including the determination that the groups in issue are not similarly circumstanced, the court holds that there is no abridgement of the constitutional rights of either petitioner under the Fourteenth Amendment of the United States Constitution or section 11 of article I of the New York Constitution by dint of provisions contained in section 369 (subd 1, par [b]) of the Social Services Law.
As a consequence of the foregoing, the respective claims of the Commissioner of Social Services is allowed in each estate.