OPINION OF THE COURT
Michael A. Telesca, J.
The sole issue raised in this proceeding for the judicial settlement of the account of Margaret Murrellwright as executrix (petitioner) is whether a claim filed by the Monroe County Department of Social Services (claimant) for medical assistance (Medicaid) rendered to the deceased is valid and enforceable. Petitioner rejects the claim on the grounds that the State recovery statute, section 369 (subd 1, par [b]) of the Social Services Law, is unconstitutional.
The facts, simply stated, are not disputed, nor is there any question concerning the amount or the correctness of the payment of the Medicaid benefits. Eleanor F. Burke received Medicaid from January 1, 1970 to May 25, 1973, amounting to $30,101.14. On September 20, 1972, the administrator of the estate of Hazel H. Stacy (a relative of the deceased) assigned the remaining assets of the estate, consisting of two mortgages having a principal balance of *297 $33,315.57, to Eleanor F. Burke. The monthly payments thereon amounted to approximately $337. Petitioner, a niece of the deceased, handled the (decedent’s) affairs under a power of attorney, and arranged to remit the mortgage receipts to a nursing home in partial payment for Miss Burke’s care. The decedent died on April 13, 1974, at the age of 90, and letters testamentary were thereafter issued to the petitioner on April 23, 1974. The will leaves the entire estate equally to Margaret Murrellwright and Elizabeth Henderson, both nieces of the deceased.
THE ISSUE
Pursuant to the applicable provisions of the Social Services Law, namely, sections 104 and 369 (subd 1, par [b]), the Monroe County Department of Social Services seeks reimbursement for the Medicaid assistance rendered to Eleanor Burke in the amount of $30,101.14. Since recoupment of medical assistance against estates excludes those estates of persons who die under the age of 65, it is alleged that this unequal treatment is an infringement of a property right and thus violative of the Fifth Amendment of the United States Constitution and section 6 of article I of the New York State Constitution.
LEGISLATIVE BACKGROUND
A brief outline of the statutory scheme and its history will provide a context for a discussion of the principles involved. The morass of social welfare legislation is aptly described by Judge Wachtler in Baker v Sterling (39 NY2d 397, 406) “the Legislature throughout the century has haphazardly enacted a series of statutes, couched in general terms, which were intended to carry out shifting or evolving concepts of social need. Older statutes based on policies dimly stated, unstated or later greatly modified, perhaps even abandoned, have been re-enacted and left to stand beside more recent enactments based on new, and apparently conflicting notions of social justice, some in fact imported from Federal law. Courts seeking a precise solution to a particular problem have been utterly frustrated in their efforts to discover an integrated or workable statutory scheme or a paramount legislative concern which would provide consistent guidance through the maze.”
*298 Historically, the State or its subdivisions have furnished welfare assistance to the poor, sick and destitute, and, because no right of recovery existed at common law (Matter of Figliola, 41 NY2d 1072) laws were passed permitting recovery under limited circumstances against (a) the recipient, (b) responsible relatives of the recipient, or (c) the estates of either. (Social Services Law, §§ 101, 104, 104-b, 369; for a detailed review of the recovery statutes see Matter of Colon, 83 Misc 2d 344.)
In 1960 Congress passed amendments to title 1 of the Social Security Act (US Code, tit 42, § 301 et seq.) consisting of enabling legislation to fund “State plants] for old-age assistance, or for medical assistance for the aged, or for old-age assistance and medical assistance for the aged” (US Code, tit 42, §302, subd [a]). Section 302 of the law required that a State plan adopted thereunder must provide, among other things, that there shall be ho recovery of any medical assistance correctly paid on behalf of a recipient under the plan, except from the estate of the recipient, and then only after the death of the recipient’s spouse. Note that recovery was not mandated under the act (many States have no recovery statutes); it was merely required that if there were recovery, it must comply with the Federal strictures.
In 1965, Congress expanded the medical service programs by passing title 19 of the Social Security Act (US Code, tit 42, § 1396 et seq.), which consisted of enabling legislation to furnish medical assistance under the following categories: “on behalf of families with dependent children” (ADC or AFDC); the aged (OAA); the blind (AB); “or permanently and totally disabled individuals” (AD). These four classes of eligible recipients are often referred to as the “categorically needy” who receive benefits under the “categorical-assistance programs”. In addition, the Federal legislation required that for a State to adopt a qualified plan, it must also provide medical assistance to persons who would be eligible under one of the categorical programs except for State eligibility requirements specifically prohibited for title 19 assistance. Persons falling within the latter classification are also referred to as the “categorically needy”. Finally, title 19 provided that a State, in *299 addition, may (and New York does) provide medical assistance to individuals who do not qualify as “categorically needy”, and whose incomes or assets are insufficient to meet the entire cost of medical care. These medically indigent persons are classified as “medically needy.”
The New York Legislature was quick to prepare and obtain approval of a State plan in July, 1966 (L 1966, ch 256, § 3, eff April 30, 1966). The eligibility requirements for individuals within New York State are set forth in section 366 of the Social Services Law. Among other things, persons eligible for home relief (Social Services Law, §§ 157-165) are eligible for medical assistance under the New York plan. Consistent with past practices, the Legislature made provision for recovery of any medical assistance correctly paid on behalf of a participant under the State plan (Social Services Law, § 369), and substantially copied the language of the Federal law which permitted such recovery. While there is nothing in the legislative history to clarify the thought processes of the legislators, it appears that they made a literal construction of the Federal law which says, “A State plan for medical assistance must *** (18) provide that *** there shall be no adjustment or recovery” (US Code, tit 42, § 1396a, subd [a], par [18]; emphasis added). It is true, as petitioner contends, that the State plan could have included more extensive recovery provisions than those provided for in title 19; for example, since the State plan included medical assistance for persons eligible for home relief, the Legislature could have made provision for recovery of Medicaid benefits against recipients of home relief provided, of course, that they did not . also fall within one of the exempt classifications under the Federal law, such as being blind or permanently and totally disabled.
The New York laws permit extensive recovery for public assistance, vis-á-vis medical assistance, against recipients, responsible relatives of recipients who have property (other than wages or property acquired through earnings) available for such recovery, particularly inheritances or other windfalls (Hodson v Stapleton, 248 App Div 524; Matter of Beaman, 171 Misc 578; Borsman v Mannix, 46 AD2d 885). Extensive recovery for public assistance is *300 likewise permitted against the estates of recipients or responsible relatives (Matter of Collins, 243 App Div 737; Matter of Berg, 271 App Div 934; Matter of Moore, 277 App Div 471; Matter of Rapalje, 73 Misc 2d 16).
Section 369 of the Social Services Law, an outgrowth of title 19, applies only to Medicaid correctly paid (there being no limitations on recovery for Medicaid incorrectly paid). Recovery may only be had thereunder against the estate, of a recipient, but only if the recipient was age 65 or over when benefits were received and then only if there is no surviving spouse, or a child under 21, blind, or disabled (Matter of Rundell, 41 AD2d 995). Clearly, the import here is to preclude recovery where there are “dependents” who might otherwise be in need of assistance, although the statute contains no ceiling on the size of an estate which may pass to a dependent. Thus, it is conceivable that a recipient could inherit a vast sum which would pass to so-called dependents free of any recovery. Also, subdivision 3 of section 366 of the Social Services Law permits recovery against a responsible relative (and by reference to sections 101 and 104 of the Social Services Law the estate of a responsible relative) for Medicaid payments, provided the responsible relative had “sufficient income and resources” during the period Medicaid was granted.
Two conclusions can be reached upon reviewing the legislative history of the Medicaid provisions: first, that both the Federal enabling act (tit 19) and the State plan (Social Services Law, §§ 363-369) make a distinction for recovery purposes between recipients of Medicaid who are under 65 years of age, and those who are 65 years of age and older when the benefits are received; and, second, there is nothing in the Federal or State legislative history specifically dealing with or explaining the basis for this distinction. In view of petitioner’s charge of age discrimination the constitutional claim based thereon is at least colorable.
While the constitutional question has been raised before (Matter of Harris, 88 Misc 2d 60), this court has found no decisions in which the constitutional question has been decided. The Federal enabling legislation by implication creates the age distinction; accordingly, the constitutional *301 ity of the recovery provisions therein should be considered first. It is not necessary to determine whether the age distinction resulting from the Social Security amendments of 1965 resulted from Congressional oversight so long as there is some rational basis for its being incorporated in the law. (Idaho Dept. of Employment v Smith, 434 US 100; Dandridge v Williams, 397 US 471.) In the area of social welfare and economics, the United States Supreme Court “has consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits”. (Idaho Dept. of Employment v Smith, supra, p 101.) If the age distinction has some reasonable basis, it does not offend the Constitution simply because it “is not made with mathematical nicety or because in practice it results in some inequality”. (Lindsley v Natural Carbonic Gas Co., 220 US 61, 78.) “A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it”. (McGowan v Maryland, 366 US 420.) It is conceivable that Congress believed that the availability of Social Security and Medicare benefits to persons 65 years of age and over justified permitting States adopting the Medicaid plan to recover for Medicaid assistance to the aged. In any event, it is unnecessary for this court to speculate on what legitimate legislative goal Congress may have had in establishing the age distinction, nor is it the function of this court to determine the rationality of the legislation. It is sufficient that none of the fundamental rights or civil liberties of the decedent or the beneficiaries named in her will were limited or abridged by reason of the legislation. (See Shapiro v Thompson, 394 US 618; Tucker v Toia, 43 NY2d 1.)
A similar age distinction results from the incorporation into the State plan of a provision for Medicaid benefits to individuals other than those required to be included under Federal law, e.g., persons on home relief. Thus, as stressed by the petitioner, there are many individuals under 65 years of age in New York receiving Medicaid benefits for which there may be no recovery. Yet, if the same individuals were to continue to receive benefits after they attained 65 years of age, there may be recovery from their *302 estates for the Medicaid furnished after age 65. Similar constitutional questions to those addressed under the Federal law are raised, but still,'the result is the same, as there is no constitutional basis for setting aside the recovery legislation.
It is possible that the State Legislature could have established a broader classification for recovery under section 369 of the Social Services Law to include adults under 65 years of age, excluding, however, the blind and the disabled, and that the Federal officials would still have approved the State plan. This court is cognizant, however, from a review of the legislative history that there were many complications with the passage of the law, that it was complex, and that possibly those involved with its passage did not wish to risk having the State plan delayed or rejected because it did not follow verbatim the statutory criteria of the Federal enabling legislation. Indeed, the use of the words “must provide” in section 1396a of title 42 of the United States Code has all of the attributes of a mandate, and for this reason legislators may have felt compelled to incorporate the Federal limitations into the State plan.
It should be noted that the petitioner bases her arguments in part upon what she asserts as a constitutional right to dispose of one’s property by will and of a beneficiary to receive the same. A governmental right to file a claim and recover for medical assistance accorded by law in no way impairs the decedent’s right to dispose of her property by will.
Thus, by way of conclusion and simply stated, the recovery provisions did not directly or indirectly impair the rights of Eleanor F. Burke to qualify for or receive Medicaid benefits during her lifetime. The fact that recovery shall be made against her estate to the detriment of the potential objects of her bounty has not limited or abridged any of the fundamental rights of these individuals under the Constitution. Petitioner is directed to pay the claim to the department and to proceed with the judicial settlement of the estate.