OPINION OF THE COURT
Fuchsberg, J.
Given the large number of elderly citizens who qualify for Medicaid payments, the issue presented in common by these three appeals is one of broadsweeping application. It *386 calls upon us to pass upon the constitutionality of section 369 (subd 1, par [b]) of our Social Services Law, New York’s implementation of title XIX of the Federal Social Security Act (US Code, tit 42, § 1396a, subd [a], par [18]). The provision at stake spells out the circumstances under which local social services agencies which actually disburse these payments may seek recoupment.
Title XIX, as relevant here, includes a scheme for funding medical assistance to persons over 65 who meet specified criteria. It also covers certain categories of needy persons under 65. To accomplish these goals, it provides grants-in-aid for State programs which meet Federal standards. Among these is a recoupment provision which, in each participating State, permits, but does not compel, post-65 payments to be recovered from a recipient’s estate, “and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under age 21 or * * * is blind or * * * disabled” (US Code, tit 42, § 1396a, subd [a], par [18]). It is not disputed that these conditions are but minima, leaving a State free to adopt a plan which not only encompasses, but exceeds the Federal one (Matter of Cheng San Chen v Toia, 67 AD2d 1085, 1086, affd 50 NY2d 826).
Exercising this option," in New York our Social Services Law (§ 366) does more than undertake the obligations mandated by the Federal legislation. Among other things, it creates two additional categories of necessitous persons who are eligible for medical assistance. The first consists of persons under 65 with resources so limited that they are eligible for home relief (§ 366, subd 1, par [a], cl [1]). The second category is made up of persons under 65 who are compelled to incur medical costs because they are the victims of “catastrophic illness” (§ 366, subd 2, par [c]).
On the other side of the ledger, it activates title XIX’s permissive recoupment policy, which, as indicated, is applicable to post-65 payments alone (Social Services Law, § 369, subd 1, par [b]).[1] All three of the proceedings before *387 us bring this section into play. In each, the decedent received Medicaid benefits while over 65. And, upon the death of each, the Department of Social Services of the county through which the assistance had been disbursed sought recoupment. The claims having been rejected by the decedents’ personal representatives, in due course the question of their validity was adjudicated in the Surrogate’s Court. Overruling the petitioning estates’ contention that recoupment under section 369 (subd 1, par [b]) would constitute a denial of equal protection under both Federal and State Constitutions (US Const, 5th, 14th Arndts; NY Const, art I, § 11), the Surrogate in each case upheld the claim.[2] Petitioners now appeal directly to this court as of right pursuant to article VI (§ 3, subd b, par [2]) of the State Constitution and CPLR 5601 (subd [b], par 2).
The equal protection claim is straightforward. Simply stated, petitioners contend that the statutory scheme, which, as authorized by title XIX and provided for in New York’s section 369, allows recoupment of Medicaid payments received by recipients at age 65, sets up an impermissibly discriminatory classification. The alleged discrimination is based on a comparison with those under 65, as to whom there is no such requirement, either in Federal or State law. For the reasons which follow, we disagree.
Preliminarily, and with what we think is more than a touch of realism, we observe, as did both Surrogate Horey and Surrogate Telesca in the course of deciding these cases below, that, in essence, the real parties in interest are not the three needy aged who received the Medicaid payments. No claim was or could be made against them during their lifetimes. Nor need they have been apprehen *388 sive about whether recoupment would exhaust their dependents’ inheritance, for section 369 is explicit in exempting the estate of a recipient who has left a widow or a surviving child who is blind, disabled or under 21. In most instances, then, only nondependent heirs, legatees or devisees could suffer disappointed expectations.
But, even if this insulation did not exist, the disparate recoupment to which petitioners point need not be found offensive to the Constitutions. For, “[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some ‘reasonable basis’, it does not offend the Constitution simply because the classification ‘is not made with mathematical nicety or because in practice it results in some inequality’” (Dandridge v Williams, 397 US 471, 485, quoting Lindsley v Natural Carbonic Gas Co., 220 US 61, 78; Board of Educ. v Nyquist, 57 NY2d 27; Alevy v Downstate Med. Center of State of N. Y., 39 NY2d 326, 332).
This doctrine is especially pertinent when, as here, two classes, though superficially alike in that the members of both are recipients of Medicaid, are circumstantially dissimilar in significant respects. For instance, to qualify for Medicaid a person under 65 must be totally and permanently disabled, suffer a catastrophic illness, be blind or in a public assistance status. In contrast, a recipient who is over 65 may qualify for Medicaid without falling into one of those categories. It seems obvious that this relaxation of eligibility requirements is designed to make it possible for those over 65 in any event to keep their homes and other specified assets when stricken with illness late in life (see Matter of McLane, 54 AD2d 1133, affd 42 NY2d 1057). Needless to say, this also tends to enhance personal dignity. To, in turn, exact an obligation of repayment only after death, and then only when no dependent survivor is likely to exist, is hardly disproportionate to these circumstances vis-a-vis those which attend Medicaid eligibility for all those under 65.
*389 Moreover, without regard to classification, since the statute operates in the social and economic sphere, section 369 (subd 1, par [b]) need but be rationally related to the achievement of a legitimate State purpose in order to withstand an equal protection attack. True it is that exhaustive research has not disclosed any legislative history articulating the precise reason for applying the recoupment thrust of this statute to the one class and not the other. But a strong presumption of constitutionality attaches to every legislative act (Marcus Assoc. v Town of Huntington, 45 NY2d 501, 505; Lighthouse Shores v Town of Islip, 41 NY2d 7, 11; Matter of Van Berkel v Power, 16 NY2d 37, 40).
Further, a rational basis need not be an articulated one (Matter of Malpica-Orsini, 36 NY2d 568, app dsmd sub nom. Orsini v Blasi, 423 US 1042). Since a legislature may or may not choose to express its motivation and, yet, in fashioning a statute, may look to the past, present or future, its rationality can be justified by any reasonable known or conceivable state of facts (Neale v Hayduk, 35 NY2d 182, 186, app dsmd 420 US 915, reh den 420 US 1009; Town of Huntington v Park Shore Country Day Camp of Dix Hills, 47 NY2d 61, 68; see, generally, Tribe, American Constitutional Law, § 16-3, p 996). So it is that here the Legislature may well have reasoned, for example, that younger medical assistance beneficiaries, even those who have suffered a catastrophic illness or been reduced to home relief, in light of their longer life expectancy, would be more likely to recover their health and attain a state of self-sufficiency than would those over 65.
Indeed, in adopting section 369, the Legislature took no extraordinary step. Social services recoupment acts had by then become commonplace (e.g., Social Services Law, § 104, subd 1 [authorizes recovery of real or personal property for the “cost of * * * assistance or care”]; Social Services Law, § 104-b [welfare lien on a recipient’s recovery in actions for personal injuries]; Social Services Law, § 105 [claim on life insurance proceeds held by welfare recipient at the time of his death]).[3]
*390 Finally, we again reject the contention that the existence of a welfare article in our State Constitution (NY Const, art XVII) commands heightened scrutiny in all social services cases (Matter of Bernstein v Toia, 43 NY2d 437, 448, 449; cf. Board of Educ. v Nyquist, 57 NY2d 27, 43-44, supra).[4]
Accordingly, in Matter of Davis and Matter of Dann the order should be affirmed, without costs, and in Matter of Burke, the decree should be affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur; Judge Gabrielli taking no part.
In Matter of Davis and Matter of Dann: Order affirmed.
In Matter of Burke: Decree affirmed.

. Section 369 (subd 1, par [b]) provides, in pertinent part:
“1. All provisions of this chapter not inconsistent with this title shall be applicable to medical assistance for needy persons and the administration thereof by the public welfare districts. Any inconsistent provision of this chapter or other law notwithstanding * * *.
*387 “(b) there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under twenty-one years of age or is blind or permanently and totally disabled”.

. Two of the three cases, Matter of Davis and Matter of Dann, were decided together by the Surrogate’s Court, Cattaraugus County (111 Misc 2d 279). Matter of Burke was decided in Surrogate’s Court, Monroe County (111 Misc 2d 296).

. During the pendency of this appeal, the Federal statute permitting and regulating recoupment (US Code, tit 42, § 1396a, subd [a], par [18]) was amended by the “Tax Equity and Fiscal Responsibility Act of 1982” to, as the Attorney-General points out, *390 allow participating States, at their pleasure, to install a practice of placing a lien on the real property of a resident of a long-term residential care facility without regard to age. We find nothing in it to alter the course of this decision.

. Other jurisdictions are of the same mind (see Charleston v Wohlgemuth, 332 F Supp 1175, affd 405 US 970; Snell v Wyman, 281 F Supp 853, affd 393 US 323;Newland v Child, 73 Idaho 530; Lalic v Chicago, Burlington & Quincy R. R. Co., 263 F Supp 987; Beck v Buena Park Hotel Corp., 30 111 2d 343; Donoho v O’Connell’s, Inc., 18 111 2d 432; Dimke v Finke, 209 Minn 29; Wallberg v Utah Public Welfare Comm., 115 Utah 242). Of special note is it that, in the Snell case, one of the specific allegations was that the exclusion of Medicaid benefits for those under 65 from New York’s comprehensive recoupment legislation violated equal protection.