In the Matter of JANET JONES, Respondent, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Appellants.

Third Department, May 10, 1984

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General* (*Clifford A. Royael* and *Alan W. Rubenstein* of counsel), for Barbara Blum, appellant.

*Gregg A. Thomas* for respondent.

OPINION OF THE COURT

WEISS, J.

In this proceeding, petitioner, a full-time employee of Cornell University and a recipient of public assistance in the form of Aid to Families with Dependent Children (AFDC), has challenged the termination of her public assistance. Special Term held that subdivision 10 of section 131-a of the Social Services Law and the implementing regulation (18 NYCRR 352.18) both violated section 1 of article XVII of the New York State Constitution to the extent that they deny State public assistance to individuals solely on the basis of their gross income exceeding 150% of the established standard of need. We disagree and reverse.

New York State was required to make numerous changes in the administration of Federally enabled and participating relief programs, including AFDC, when Congress enacted the Federal Omnibus Budget Reconciliation Act of 1981 (OBRA) (Pub L 97-35).[1] To bring State law into conformity with the applicable Federal requirements, the Legislature enacted subdivision 10 of section 131-a of the Social Services Law and the State Department of Social Services promulgated 18 NYCRR 352.18, both of which provide that no person or family shall be eligible for home relief, AFDC or veteran assistance for any month in which the gross income of the family, before application of certain income exemptions and disregards, exceeds 150% of the standard of need for a family of the same composition or size.[2] The methodology for defining or determining standard of need is provided in the statute. In this case,

---

1. Under OBRA, a State plan in the AFDC category must: "provide that no family shall be eligible for aid under the plan for any month if, for that month, the total income of the family (other than payments under the plan), without application of paragraph (8) * * * exceeds 150 percent of the State's standard of need for a family of the same composition" (US Code, tit 42, § 602, subd [a], par [18]).

2. Subdivision 10 of section 131-a reads in pertinent part as follows:

"(a) Notwithstanding the provisions of this section or any other law to the contrary, no person or family shall be eligible for * * * aid to dependent children * * * for any month in which the total income of the family, excluding benefits received under such programs and without application of the income exemptions and disregards as provided in subdivision eight of this section, exceeds one hundred fifty percent of the standard of need for a family of the same composition.

"(b) For purposes of this subdivision, the term standard of need shall include the amounts in the schedule set forth in paragraph (a) of subdivision two of this section plus amounts for shelter, and fuel for heating * * * [and] amounts for home energy payments" (L 1981, ch 1053, § 5, as amd by L 1983, ch 742, § 1).

petitioner, who was divorced and had two minor children, earned a gross of $736.30 monthly and had been receiving AFDC in the sum of $484.77 monthly. The standard of need for her family was comprised of $200 for basic needs, $177 for shelter including heat, and $30 for home energy payments, totaling $407. Since the statutory 150% limitation was $610.50 and petitioner was earning $736.30, respondents terminated her assistance grant. An administrative law judge upheld the determination after a fair hearing, giving rise to the instant proceeding. Special Term concluded that the challenged statute and regulation violate section 1 of article XVII of the New York State Constitution, which imposes upon the State an affirmative duty to aid the needy. In this respect, Special Term reasoned, the gross income rule "does not bear any usual or necessary correlation to available income", and effectively "ignores the conceded need of the working poor". This appeal by respondents ensued.

We start with a recognition that the State is constitutionally charged with providing "aid, care and support of the needy" (NY Const, art XVII, § 1). The provision for assistance to the needy is not a matter of legislative grace, but compelled by constitutional mandate (*Matter of Lee v Smith,* 43 NY2d 453, 460; *Tucker v Toia,* 43 NY2d 1, 7-8). While the Legislature retains discretion to determine the means of distribution and classification of recipients, including defining those who are "needy", by no means may the Legislature refuse to aid those classified as needy (*Tucker v Toia, supra*). Nor may assistance be denied for reasons extraneous to an individual's defined need (*Matter of Lee v Smith, supra*).

Petitioner asserts that the 150% gross income rule conflicts with section 1 of article XVII of the State Constitution in that it bears no true relationship to the actual needs of the applicants. Previously, an applicant for AFDC qualified as needy if his or her *available* income was less than the standard of need. Available income was computed as gross income less certain expenses such as payroll deductions, statutory earned income deductions and child care expenses. This standard was tailored to account for the actual economic circumstances in individual cases. It is

undisputed that, but for the 150% rule, petitioner would be eligible for monthly public assistance.

■ Despite this result, we find no constitutional infirmity in the alternative definition of "needy" set forth in subdivision 10 of section 131-a of the Social Services Law. Essentially, section 131-a, when read *in pari materia* (see *Rector, Church Wardens & Vestrymen of St. Bartholomew's Church v Committee to Preserve St. Bartholomew's Church,* 84 AD2d 309, 312, app dsmd 56 NY2d 645; McKinney's Cons Laws of NY, Book 1, Statutes, § 221), sets forth two alternative definitions of "needy". The first, in subdivisions 1 through 3, is based on available income; the second, in subdivision 10, is based on gross income. In redefining the AFDC definition of "needy", the Legislature acted within its broad discretion (*Matter of Bernstein v Toia,* 43 NY2d 437) and properly so, for a failure to adopt the Federal 150% gross income cutoff point (US Code, tit 42, § 602, subd [a], par [18]), would have risked the loss of Federal funding (see US Code, tit 42, § 604, subd [a]; Social Services Law, § 358; see, also, Governor's program and approval memoranda, NY Legis Ann, 1981, p 543). Nor is it irrational to define need on the basis of income (see *Schweiker v Hogan,* 457 US 569, 591). The 150% rule furthers a proper legislative objective of allocating the ever more scarce resource of welfare funds to only those persons incapable of maintaining their basic needs (see *New York Dept. of Social Servs. v Dublino,* 413 US 405, 413). To assume that individuals whose gross income exceeds 150% of the established standard of need are capable of self-support is not irrational and works a viable eligibility criterion. In our view, petitioners have not overcome the strong presumption of constitutional validity inherent in this legislation (see *Matter of Davis,* 57 NY2d 382, 389).

■ Nor do we find the 150% rule violative of petitioner's right to equal protection. The standard of review of petitioner's equal protection claim is the traditional rational basis test (*Matter of Davis, supra,* p 388; *Matter of Lee v Smith,* 43 NY2d 453, 460, *supra*). Petitioner's argument is premised on a contention that the 150% rule discriminates against the working poor in that child care expenses are not included in the standard of need, leaving her with less

available income than a nonworking recipient of public assistance in the same household category. Which items to include in a State "standard of need" is generally a matter of legislative discretion (*King v Smith,* 392 US 309, 318-319). Here, Federal regulation prohibits the inclusion of child care expenses as a special need (45 CFR 233.20 [a] [2] [v]). Instead, child care is treated as a disregard from income only after eligibility is otherwise established (US Code, tit 42, § 602, subd [a], pars [8], [18]; 45 CFR 233.20 [a] [3] [xiii]; [11] [i], [ii]). The State statute and regulations are in conformity with these requirements, and thus do not include child care in the standard of need.

Conceivably, the 150% gross income definition may leave some working persons, such as petitioner, with less available income than nonworking applicants due to such factors as child care expenses. Nonetheless: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality'" (*Dandridge v Williams,* 397 US 471, 485, quoting *Lindsley v Natural Carbonic Gas Co.,* 220 US 61, 78). Here, the Legislature's adoption of a cutoff point for eligibility at 150% of gross income is rationally related to the legitimate goals of conserving Federal funding and allocating limited welfare funds to the neediest of applicants (*Schweiker v Hogan,* 457 US 569, *supra; Dandridge v Williams,* 397 US 471, *supra*). It is not unreasonable to establish eligibility on a general assumption that applicants with total income over 150% of the State standard of need will have sufficient income to be self-supporting, as opposed to those with lesser earnings (*Schweiker v Hogan, supra,* p 591; see *Califano v Jobst,* 434 US 47, 52-53). Regardless of whether we agree with the legislative decision to impose a cutoff of 150% above the standard of need, such an exercise of discretion constitutes a legislative rather than a judicial function (*RAM v Blum,* 77 AD2d 278, app withdrawn 54 NY2d 834). This court will not substitute its judgment for that of the Legislature. For

these reasons, we also reject petitioner's contention that the 150% rule deprives her of due process of law (see *Richardson v Belcher,* 404 US 78, 81; *Roundtree v Berger,* 420 F Supp 282, affd 430 US 912).

The judgment should be reversed, on the law, with costs, the determination confirmed, and the petition dismissed.

MAHONEY, P. J., KANE, CASEY and LEVINE, JJ., concur.

Judgment reversed, on the law, with costs, determination confirmed, and petition dismissed.