In the Matter of the Estate of ROSE SAMUELSON, Deceased. HARVEY SAMUELSON, Appellant; DEPARTMENT OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Respondent.

Second Department, September 16, 1985

### APPEARANCES OF COUNSEL

*Jess M. Berkowitz* (*Melvin L. Greenwald* of counsel), for appellant.

*Frederick A. O. Schwarz, Jr., Corporation Counsel* (*June A. Witterschein* and *Marvin R. Kwartler* of counsel), for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

At issue on this appeal is whether Social Services Law § 369 (1) (b) bars recovery of correctly paid medical assistance benefits from the estate of an individual who was the recipient of medical assistance while age 65 and older, and which recipient was survived by a legally blind and totally permanently disabled adult child who was neither a dependent of the recipient nor a named beneficiary under the recipient's last will and testament.

Surrogate Laurino answered this question in the negative and permitted recovery of the medical assistance benefits by the Department of Social Services of the City of New York (respondent) from the recipient's estate. We agree and accordingly affirm.

The essential facts underlying the instant proceeding are not in dispute. The decedent, Rose Samuelson, received medical assistance benefits, after age 65, from the respondent for, among other things, home care services, drug costs, and medical and nursing services. The decedent died on September 12, 1982, survived by two adult children, a son, Harvey Samuelson (petitioner) and a daughter, Beverly Samuelson. The decedent's daughter is legally blind and totally and permanently disabled and has been the recipient of public assistance since 1979. Beverly Samuelson has also been residentially placed by respondent. Since 1979, the decedent has not provided for her disabled daughter's support.

Under the terms of the decedent's last will and testament dated September 16, 1973, her entire estate, which consisted of a one-half interest in her residence, was bequeathed to petitioner. Petitioner was the owner of the other half interest in the decedent's home. No testamentary provision or bequest was made for the decedent's daughter. In her will, the decedent explained: "I make no provision for my beloved daughter, BEVERLY SAMUELSON, not because of any preference for my son, HARVEY, but with the hope and expectation that should my daughter BEVERLY, have financial needs in the future, my son, HARVEY, would exercise his best efforts to make reasonable provision for her." The decedent's will was admitted to probate, upon Beverly Samuelson's waiver and consent, in January 1983. Petitioner was subsequently appointed as executor of the estate.

Respondent served a verified proof of claim upon petitioner, as executor of the deceased's estate, seeking to recover the sum of $23,798.40 from the estate for medical assistance benefits correctly paid to the decedent prior to her death. Respondent subsequently served an amended proof of claim increasing its claim to the sum of $28,801.88. By notice dated December 5, 1983, petitioner rejected respondent's amended claim. Petitioner maintained that the requested recovery was barred under Social Services Law § 369 (1) (b) which provides, in pertinent part: "there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only

after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under twenty-one years of age or is blind or permanently and totally disabled".

Petitioner instituted the instant proceeding pursuant to SCPA 1809 seeking a judicial determination as to the validity of respondent's claim. On June 20, 1984, Surrogate Laurino rendered an opinion in which he determined that the subject claim was legally valid and enforceable. The Surrogate, although acknowledging that the literal terms of Social Services Law § 369 (1) (b) supported petitioner's position, concluded that the rationale and intent of the statutory scheme warranted a contrary result. In analyzing section 369 (1) (b), the Surrogate identified the three classes of individuals which the statute intended to protect, namely, the decedent's surviving spouse, surviving infant issue, and surviving blind or totally and permanently disabled issue. A common characteristic of these three groups, the Surrogate noted, was their dependency upon the decedent and their concomitant need of the support from the deceased's assets. While Beverly Samuelson fit within the latter statutorily protected class, Surrogate Laurino underscored the fact that she had not been a dependent of the decedent since 1979 and was not a named beneficiary of the decedent's estate. As a result, the exception under section 369 (1) (b), in the Surrogate's view, did not apply. The Surrogate accordingly allowed respondent's entire claim of $28,801.88 against the estate. There should be an affirmance.

New York State's program entitled "Medical Assistance For Needy Persons" (Social Services Law, art 5, tit 11), commonly referred to as "Medicaid", was enacted in reaction to and in conformance with the Federal Social Security Act's title I and title XIX amendments of 1960 and 1965, respectively (42 USC § 301 et seq.; 42 USC § 1396 et seq.) which consist of enabling legislation to assist each State in furnishing medical assistance to needy individuals. Essentially, the Federal legislation offers States which adopt qualifying medical assistance programs, matching Federal funds to meet the costs of such programs. The 1960 amendment to the Social Security Act (42 USC § 301 et seq.) was concerned solely with needy aged individuals. In 1965, however, Congress added Social Security Act title XIX (42 USC § 1396 et seq.) which expanded the scope of medical assistance programs to include families with dependent children as well as aged, blind and totally and permanently disabled individuals, "whose income and resources are insufficient to meet the costs of necessary medical services" (42 USC § 1396 [1]). These four classes of eligible recipients are referred to as the "categorically

needy" (*see, Friedman v Berger,* 547 F2d 724, 726, *cert denied* 430 US 984; *Matter of Burke,* 111 Misc 2d 296, 299, *affd* 57 NY2d 382). Qualifying State medical assistance plans must provide benefits for the "categorically needy" (42 USC § 1396 [a] [10] [A])* and, in addition, the State plans are to provide that:

"Any adjustment or recovery [for medical assistance correctly paid on behalf of an individual] may be made only after the death of the individual's surviving spouse, if any, and only at a time —

"(A) when he has no surviving child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title" (42 USC § 1396p [b] [2]; *see also,* 42 USC § 1396a [a] [former 18]).

In 1966, the New York State Legislature, seeking to meet the requirements of the Federal enabling legislation (42 USC § 1396 *et seq.*) and thus qualify for matching Federal funds, adopted Social Services Law, article 5, title 11 (*see,* Social Services Law § 363 *et seq.; see also, Baker v Sterling,* 39 NY2d 397, 404). The State statutory scheme essentially mirrors the Federal enabling legislation and, in fact, Social Services Law § 369 (1) (b), which deals with the recoupment of correctly paid benefits from the estate of a deceased recipient, at issue herein, quotes almost verbatim the parallel section in the Federal enabling statute (*see,* 42 USC § 1396p [b] [2]).

At the outset, we acknowledge, as Surrogate Laurino did, that a literal reading of section 369 (1) (b) leads to the conclusion that respondent's claim is statutorily unenforceable since the decedent was survived by a blind and totally and permanently disabled daughter. Moreover, as a general rule, where the statutory language is clear and unambiguous, the courts will not inquire into extrinsic evidence in order to determine legislative

---

* Social Security Act title XIX also permits, as a matter of State option, qualifying State medical assistance plans to include individuals who do not qualify as "categorically needy" but whose personal income and assets are insufficient to meet their medical expenses (*see,* 42 USC § 1396a [a] [10] [C]). These medically indigent persons are classified as the "medically needy" (*see, Friedman v Berger,* 547 F2d 724, 726, *cert denied* 430 US 984; *Matter of Burke,* 111 Misc 2d 296, 299, *affd* 57 NY2d 382). New York State's program makes provision for two groups of "medically needy" persons; namely, persons who are either receiving or are eligible for home relief (Social Services Law § 366 [1] [a] [1]); and persons who are not otherwise eligible "in the event of catastrophic illness" (Social Services Law § 366 [2] [c]).

intent (*see, McCluskey v Cromwell,* 11 NY 593, 601; McKinney's Cons Laws of NY, Book 1, Statutes § 120). However, in an appropriate situation, the court is not precluded from departing from the literal letter of a statute in order to sustain the legislative objective of the statutory scheme. "In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered and given effect, and the literal meanings of words are not to be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted" (McKinney's Cons Laws of NY, Book 1, Statutes § 111; *see also, New York State Bankers Assn. v Albright,* 38 NY2d 430, 436-437; *People ex rel. Westchester Fire Ins. Co. v Davenport,* 91 NY 574, 584-585). With this premise, we conclude that the literal interpretation of section 369 (1) (b), urged by petitioner herein, would contravene and frustrate the legislative objective sought to be achieved by the statute.

The legislative background concerning Social Services Law § 369 (1) (b) is brief and, as indicated *supra,* essentially reflects an intent to comply, as far as practicable, with the Federal enabling legislation. Given the absence of sufficient legislative history with regard to Social Services Law § 369 (1) (b) and in view of the fact that the section essentially parallels the restrictive recoupment provisions contained in the Social Security Act (*see,* 42 USC § 1396p [b] [2]) an analysis of the relevant Federal legislative history is appropriate (*see, Matter of Cullen [Roberts],* 93 AD2d 907; *Rivera v Patino,* 543 F Supp 1160, 1163).

The origins of the Federal restrictive recoupment provisions in 42 USC § 1396p (b) (2) (A) (*see also,* 42 USC § 1396a [a] [former 18]), are found in the 1960 amendment to Social Security Act title I (42 USC § 301 *et seq.*). Under that statutory framework, recoupment of medical assistance benefits was not permitted during the lives of either the recipient or the recipient's spouse (*see,* 42 USC § 302 [a] [former 11] [E]). The Senate report accompanying the 1960 amendment explained the purpose of the restrictive recoupment provision as follows: "A State would not be permitted as a condition for medical assistance to impose a lien on the property of a recipient during his lifetime. An enrollment fee for recipients would not be permitted. However, the bill would permit the recovery from an individual's estate after the death of his spouse if one survives him. *This provision was inserted in order to protect the individual and his spouse from the loss of their property, usually the home, during their lifetime*" (1960 US Code Cong & Admin News, at 3615; emphasis added).

The 1965 amendment to the Social Security Act (42 USC § 1396 *et seq.*) added the recoupment provision which is presently contained in 42 USC § 1396p (b) (2) (A). Commenting on the expansion of the medical assistance program, the Senate report stated: "Titles I and XVI authorizing the medical assistance for the aged program now provide that the States may not impose a lien against the property of any individual prior to his death on account of medical assistance payments except pursuant to a court judgment concerning incorrect payments, and prohibit adjustment or recovery for amounts correctly paid except from the estate of an aged person after his death and that of his surviving spouse. This provision, under the committee bill, has been broadened so that such an adjustment or recovery would be made only at a time when there is no surviving child who is under the age of 21 or who is blind or permanently and totally disabled" (1965 US Code Cong & Admin News, at 2020).

With regard to the congressional objectives sought to be achieved in providing the appropriation for the broadened medical assistance program under title XIX, the Senate report stated further: *"Section 1901 authorizes the appropriation for each fiscal year of a sum sufficient to carry out the purposes of title XIX, in order to enable each State* (as far as practicable under the conditions in such State) *to furnish medical assistance on behalf of aged, blind, or permanently and totally disabled individuals and families with dependent children,* whose income and resources are insufficient to meet the costs of necessary medical services, and rehabilitation and other services *to help such individuals and families attain or retain capability for independence or self-care"* (1965 US Code Cong & Admin News, at 2144; emphasis added).

The above-quoted comments clearly reflect a legislative concern for the protection of those individuals who were financially dependent on the deceased recipient, namely, the recipient's surviving spouse, infant issue, or blind or disabled children. This protection is afforded by the statutory provisions currently embodied in 42 USC § 1396p (b) (2) (A) and Social Services Law § 369 (1) (b) which seek to insure that the assets of the deceased recipient's estate, upon which these individuals rely, would not be depleted by the recoupment of medical assistance benefits. Thus, contrary to petitioner's position, the triggering factor of the restrictive recoupment statutes is not the mere existence of a surviving spouse, infant issue, or blind or disabled child. Rather, the statute is predicated on the assumption that the surviving spouse, infant issue or blind or disabled child was financially dependent upon the recipient prior to the latter's death and that

the protected individual is entitled to a share of the deceased recipient's estate. Clearly, it is this latter group of needy individuals which the restrictive recoupment provision seeks to protect since the depletion of the assets of the deceased recipient's estate would be directly detrimental to their future financial independence and self-care.

Judged by these standards, it is manifest that given the circumstances of the instant proceeding, Social Services Law § 369 (1) (b) does not preclude the recovery of medical assistance benefits against the decedent's estate. Although the decedent was survived by a blind and totally and permanently disabled daughter, Beverly Samuelson had not been financially dependent upon her mother since 1979 and was not a named beneficiary in the deceased's will. In fact, Beverly Samuelson was expressly disinherited and she has not taken any steps to contest the validity of her mother's will. Additionally, it must be emphasized that if respondent's claim were to be deemed enforceable, the only person who would benefit from the financial windfall would be petitioner, who admittedly is not an individual who that statute is intended to protect. Such a result was obviously not contemplated by the statute.

Parenthetically, we note that our analysis is not affected by the fact that the decedent's will contains precatory language expressing her desire that petitioner provide for the future needs of his disabled sister. It is well established that precatory language contained in a will is merely an expression of the testator's wish or desire and is not legally binding on the person to whom the wish or desire is directed (*see, Lawrence v Cooke,* 104 NY 632; *Matter of Sparacio,* 61 AD2d 486, *affd* 47 NY2d 771; *Matter of Lange,* 206 Misc 81). Thus, the named party "can carry out the wish and desire of the testator or not as he sees fit. *Matter of Steiner,* 134 App. Div. 162, 118 N.Y. Supp. 833. The court has no control over his actions and may not substitute its judgment for his" (7 Warren's Heaton, Surrogates' Courts, § 24, ¶ 3 [a] [6th ed]). In the instant proceeding, petitioner could not be legally compelled to utilize the assets of his mother's estate for his sister's benefit. As such, the precatory language in the decedent's will does not have any effect on the fact that Beverly Samuelson was disinherited under her mother's will.

In addition to the aforementioned cited legislative authority, our interpretation of Social Services Law § 369(1) (b) finds ample support in the case law discussing that section. For example, in *Matter of Davis* (57 NY2d 382, 387-388), which involved an equal protection challenge to section 369 (1) (b), the

Court of Appeals addressed the purpose of the restrictive recoupment section as follows: "[I]n essence, the real parties in interest are not the three needy aged who received the Medicaid payments. No claim was or could be made against them during their lifetimes. Nor need they have been apprehensive about whether recoupment would exhaust their dependents' inheritance, for section 369 is explicit in exempting the estate of a recipient who has left a widow or a surviving child who is blind, disabled or under 21. In most instances, then, only nondependent heirs, legatees or devisees could suffer disappointed expectations."

Similarly, in *Matter of Burke* (111 Misc 2d 296, 300, *affd* 57 NY2d 382, *supra*) Surrogate Telesca noted, *"[c]learly, the import [of Social Services Law § 369 (1) (b)] is to preclude recovery where there are 'dependents' who might otherwise be in need of assistance,* although the statute contains no ceiling on the size of an estate which may pass to a dependent" (emphasis added; *see also, Matter of Harris,* 88 Misc 2d 60, 64, *affd* 61 AD2d 881). In *Matter of Dann* (111 Misc 2d 279, 292, *affd* 57 NY2d 382), a companion case to *Matter of Burke* (*supra*), Surrogate Horey stated, "[i]t is to be recalled that recoupment provided under section 369 (subd 1, par [b]) of the Social Services Law is not one that is 'carte blanche'. Recovery is permitted against the estate of the decedent recipient over 65 only if there is no spouse surviving or child surviving under 21 or who is blind or disabled. *To a considerable degree then those most dependent on a deceased recipient are protected from loss of estate assets"* (emphasis added).

Petitioner relies heavily upon the cases of *Matter of Rundell* (41 AD2d 995) and *Matter of McLane* (90 Misc 2d 1067, *affd* 54 AD2d 1133, *affd* 42 NY2d 1057) to support his position that a literal interpretation of Social Services Law § 369 (1) (b) is required. Our review and analysis of these cases, however, leads us to a contrary conclusion.

In *Matter of Rundell* (*supra*), the recipient of medical assistance since age 65, was survived by a spouse who had not resided with the decedent for several years prior to his death. In fact, the decedent and his widow had resided together for only a short time after their marriage. The Surrogate in *Rundell,* relying solely on the fact that the decedent and his surviving spouse had been living separate and apart, determined that Social Services Law § 369 (1) (b) did not apply to preclude recovery of correctly paid medical assistance benefits from the estate. On appeal, however, the Third Department reversed stating that in the absence of evidence to establish abandonment by the recipient's

widow prior to his death, which would disqualify the widow from taking under EPTL 5-1.2 (a) (5), the restrictive recoupment provisions of section 369 (1) (b) applied. Although the *Rundell* court did not expressly state that the operative factors for triggering section 369 (1) (b) were the widow's financial dependency on the deceased as well as the right to share in the deceased's estate, the Third Department's reference to the issue of abandonment and its concomitant effect on the widow's right to take under the EPTL, reflects an understanding that these factors were of central concern to the restrictive recoupment statute. Accordingly, while the *Rundell* court adhered to a strict interpretation of section 369 (1) (b), given the factual circumstances therein, it did indicate a recognition of the necessity to depart from the statute's literal terms in order to carry out the legislative intent.

*Matter of McLane* (90 Misc 2d 1067, *supra*) was concerned with a similar situation in which the deceased, a recipient of medical assistance while over the age of 65, was survived by a spouse. By the terms of his will, the decedent bequeathed his real estate interests, which consisted of a one-half interest in a farm, to his sister. The residuary of the recipient's estate was left to his widow. At the time of the recipient's death, however, there were no assets in his estate other than the farm property. Surrogate Cribb, in *Matter of McLane* (*supra*), held invalid, under Social Services Law § 369 (1) (b), a claim against the estate for medical assistance benefits on the basis that the recipient was survived by a spouse. The Fourth Department (54 AD2d 1133, *supra*) affirmed upon Surrogate Cribb's opinion. A sole dissenting Justice, however, voted to reverse, stating as follows: "The prime reason set forth for the adoption [of section 369] was that it would protect the individual and his spouse from the loss of their property, usually the home, during their lifetime (see, Senate Report No. 1856, US Congressional and Administrative News, 1960, vol 2, p 3615). It is clear that by permitting appellant to proceed against respondent and recover the value of the assistance, the true legislative intent behind the enactment of section 369 (subd 1, par [b]) will not be frustrated * * * In the instant case, the intended protection of the surviving spouse would not be adversely affected by appellant's recovery against respondent and the denial of that recovery would operate to frustrate the appellant's legitimate right to reimbursement of the costs of medical assistance that have been furnished the deceased at public expense" (*Matter of McLane*, 54 AD2d 1133, 1134 [Moule, J.], *supra*). The Court of Appeals in *Matter of*

*McLane* (42 NY2d 1057, *supra*) affirmed for the reasons stated by Surrogate Cribb.

Admittedly, the case of *Matter of McLane* illustrates a literal adherence to the terms of Social Services Law § 369 (1) (b). However, we do not agree with petitioner's contention that the rationale expressed in *McLane* dictates a reversal in the instant proceeding. In the first instance, it is significant to note that while Surrogate Cribb held in accordance with the explicit terms of section 369 (1) (b), he did acknowledge that in certain cases involving a surviving spouse, the restrictive recoupment provisions might not apply. On this point, Surrogate Cribb stated, "[i]t is clear that section 369 (subd 1, par [b]) precludes, *except under certain circumstances not here present,* recovery on account of medical assistance against the property in the estate of any individual who leaves a surviving spouse" (*Matter of McLane, supra,* at p 1070, citing *Matter of Rundell,* 41 AD2d 995, *supra;* emphasis added).

Moreover, as Surrogate Laurino pointed out in the instant matter, "[u]nstated but nonetheless pertinent [in *Matter of McLane* (*supra*)] was the right of the surviving spouse to elect against the terms of the will which she did not exercise". Accordingly, the recipient's widow, who was admittedly a protected individual under Social Services Law § 369 (1) (b), possessed a statutory property interest in the estate (*see,* EPTL 5-1.1), irrespective of her testamentary rights under her husband's will, which could be asserted against the testamentary assets. Thus, the operative factors of Social Services Law § 369 (1) (b) had been met in *Matter of McLane* (*supra*), since the recipient's widow had been dependent on the recipient and was entitled to a share of the proceeds of the estate. Moreover, the surviving spouse's voluntary waiver of her statutory right of election can be characterized as a disposition of her property interest in favor of her sister-in-law. In the instant proceeding, however, it is undisputed that Beverly Samuelson possessed neither a testamentary nor a statutory interest to assert against the assets of her mother's estate. Clearly, then, *Matter of McLane* (*supra*), is not dispositive herein.

Having reviewed both the legislative and judicial authority concerning Social Services Law § 369 (1) (b), we find ourselves in complete agreement with Surrogate Laurino's conclusion that both logic and the legislative intent behind the statute mandate that respondent's claim be deemed valid and enforceable against the estate. A contrary result would undoubtedly undermine the purpose of the statutory scheme since the only recipient of the

$28,801.88 windfall to the estate would be petitioner who is not an intended beneficiary of the restrictive recoupment provision. The drafters of the statute could not have intended that a nonprotected individual, such as petitioner, be permitted to realize financial gain if the medical assistance claim were disallowed merely because the recipient was survived by a spouse, infant issue or disabled child who is without an assertable interest in the estate. In conclusion, we note that insofar as Surrogate Laurino treated Beverly Samuelson as having predeceased her mother for purposes of section 369 (1) (b), we do not adopt his rationale but rather rely upon the reasons set forth herein to support our holding.

NIEHOFF, RUBIN and LAWRENCE, JJ., concur.

Decree of the Surrogate's Court, Queens County, dated July 31, 1984, affirmed, with costs payable by the appellant personally.