OPINION OF THE COURT
William P. Warren, J.
On November 1, 1993, Hearing Examiner Catherine Miklitsch issued findings of fact, decision and order in the above matter. In that decision she found that the provisions of section 545 (1) of the Family Court Act which require support to be effective as of the earlier of the date of the application for an order of filiation, or, if the children for whom support is sought are in receipt of public assistance, the date for which their eligibility for public assistance was effective, were in violation of the New York Constitution and the Fourteenth Amendment of the United States Constitution in that they denied equal protection of the laws. On November 26, 1993 objections to this order were filed by the petitioner. Transcripts were prepared and received by the court in January of 1994. No rebuttal has been filed by the respondent to the objections.
On February 13, 1992, the Commissioner of Social Services on behalf of A. S. filed a petition with this court alleging that the respondent, J. G., was the father of a child by the name of K. L. B. who was born on October 27, 1983. The respondent denied the allegations of the petition, a hearing was conducted by the court and on February 16, 1993 a decision was made and an order entered finding the respondent to be the father of that child. The matter was referred to the Hearing Examiner for a hearing on support. On August 24, 1993, a support hearing was held and a written decision establishing child support was issued by the Hearing Examiner on November 1, 1993. In that decision, the Hearing Examiner denied awarding child support retroactive to the date that the child was first in *12 receipt of public assistance notwithstanding that the child was in receipt of public assistance from September 18, 1991 to January 29, 1993. The objections argue that the Hearing Examiner erred in denying child support from the date for which eligibility for public assistance was first effective and declaring the statute unconstitutional. It is also argued that the Hearing Examiner erred by varying the basic child support amount and reducing the respondent’s obligation from $136.91 to $70 per week.
Chapter 41 of the Laws of 1992, § 144 thereof, amended Family Court Act § 545. This amendment was effective as of April 2, 1992. Prior to this date the statute provided for orders of child support to be effective as of the date of the application for an order of filiation. The new statute changed this to read as follows: "The order shall be effective as of the earlier of the date of the application for an order of filiation, or, if the children for whom support is sought are in receipt of public assistance, the date for which their eligibility for public assistance was effective.” (Family Ct Act § 545 [1].)
The Hearing Examiner states in her decision that the provision of the statute which permits child support to be awarded prior to the filing of the petition if the child is in receipt of public assistance denies equal protection to children who are not in receipt of public assistance. She further claims that it also denies equal protection to parents who are subject to child support laws subjecting parents of public assistance recipients to longer support periods. She argues that the Equal Protection Clause precludes arbitrary and invidious discrimination and requires all persons similarly situated to be treated alike. Her conclusion is that there is no rational basis for imposing different child support obligations upon similarly situated parents or in providing that children in receipt of public assistance are entitled to support for a period of time longer than children not in receipt of public assistance. Because she can find no rational basis for treating these classes of individuals differently, she declares that the statute is in violation of the New York Constitution as well as the United States Constitution.
In 1993 in Commissioner of Social Servs. [Foreman] v Milien (156 Misc 2d 527), the Family Court considered the question of whether Hearing Examiners have the power to determine the constitutionality of statutes. Although it held that they did in dicta, since the issue of constitutionality had not been properly raised, no determination on the merits was *13 made. That case was the subject of a Supplementary Practice Commentary by Douglas J. Besharov in the 1993 Practice Commentaries (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 439, 1994 Pocket Part, at 68): "One must, however, question the propriety of hearing examiners striking down statutes, especially when the issue seems a close one. The legislature has addressed the issue of when courts of first instance should strike down a statute by saying that they should not do so unless the 'conclusion is inescapable’ or where the consequences 'may be severe and the damage irreparable.’ (See generally McKinney’s New York Statutes, § 150.)” This court agrees that there is sufficient authority for Hearing Examiners, in certain circumstances, to enter declarations of constitutionality. However, there is considerable weight to the argument that in the instant case the Hearing Examiner should not have entered such a declaration.
To begin with, McKinney’s Consolidated Laws of NY, Book 1, Statutes, in its compilation of the construction and legal interpretation of the statutes enacted by the Legislature, gives guidance to courts in these circumstances. McKinney’s Consolidated Laws of NY, Book 1, Statutes § 150 (at 312-313, 314-320), with regard to the issue of the declaration of constitutionality of a statute, states as follows:
"A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent on its face.
"Statutes are presumed valid and constitutional and the one challenging the statute has the burden of showing the contrary * * *
"Every presumption will be indulged in to support and sustain legislation * * *
"[D]oubts should be resolved in favor of the constitutionality or legality of a statute * * *
"The burden of showing the unconstitutionality of a statute is on the party asserting it who must demonstrate such fact beyond a reasonable doubt.”
It is noted that the record herein reveals that the only assertion of unconstitutionality was made by the pro se respondent at the hearing when he claimed the statute was *14 unconstitutional. Nothing further was presented in this hearing to support a claim of unconstitutionality and it appears that the Hearing Examiner took it upon herself to engage in an analysis of why the statute failed to meet constitutional muster. No significant record was established before the Hearing Examiner upon which one could make a reasoned determination as to whether there is or is not a rational basis for the enactment of this legislation. The Hearing Examiner did not have a full and complete opportunity to evaluate the arguments on the issue of constitutionality since no arguments were made below other than the mere raising of the issue by the respondent claiming the statute was unconstitutional. The Attorney-General was not notified of the proceeding as is required by the CPLR (CPLR 1012 [b]). No legislative history was reviewed in the matter below. The record of this hearing contains a complete dearth of information from which one could begin to make a thoughtful decision as to the constitutionality of the statute at issue.
In 1977, the New York State Court of Appeals in a much-cited case of Alevy v Downstate Med. Ctr. (39 NY2d 326) analyzed the methodology for an equal protection analysis. Therein the Court stated that a different standard is to be applied depending upon whether the classification is a "suspect” classification or affects a "fundamental interest” as opposed to those situations where no such suspect classification or fundamental interest is involved. Suspect classifications include those based upon national origin (Hernandez v Texas, 347 US 475), race (Loving v Virginia, 388 US 1) and alienage (In re Griffiths, 413 US 717). Fundamental interests include voting (Dunn v Blumstein, 405 US 330), travel (Shapiro v Thompson, 394 US 618), the right of free speech (Police Dept. of Chicago v Mosely, 408 US 92) and others. Neither a suspect classification nor a fundamental interest would appear to be involved when one analyzes Family Court Act § 545.1.
Where neither a suspect classification nor a fundamental interest is affected, the standard to be applied is one of rationality, that is whether the challenged classification bears a reasonable relationship to some legitimate legislative objective. (Alevy v Downstate Med. Ctr., 39 NY2d 326, supra.) In that decision the New York State Court of Appeals stated (at 332): "The test has been applied with great indulgence, especially in the area of economics and social welfare where, for example, it has been said that '[i]f the classification has some "reasonable basis”, it does not offend the Constitution simply *15 because the classification "is not made with mathematical nicety or because in practice it results in some inequality.” ’ (Dandridge v Williams, 397 US 471, 485; see Matter of Levy, 38 NY2d 653; Matter of Figueroa v Bronstein, 38 NY2d 533; Gleason v Gleason, 26 NY2d 28; Matter of Bauch v City of New York, 21 NY2d 599.) Indeed, in actual application the rejection of classifications under this test appear to be rare.”
In 1982 the New York State Court of Appeals was called upon to pass upon the constitutionality of section 369 (former [1] [b]) of the Social Services Law. That statute spelled out the circumstances under which local social services agencies which actually disperse payments may seek recoupment. Social Services Law § 366 established different classifications in terms of eligibility for medical assistance benefits. Those benefits were made available to persons under 65 with resources so limited that they were eligible for Home Relief. They were also made available to persons under 65 who were compelled to incur medical costs because they were victims of what is known as a "catastrophic illness.” Finally, a third category of eligibility exists for individuals who are over the age of 65 who meet specified criteria. The New York State statutory scheme permitted recoupment of Medicaid payments received by recipients at age 65 or older while no recoupment was available for those under 65. It was argued that this established an impermissible discriminatory classification and thus violated the Equal Protection Clause of the State and Federal Constitutions. The Court of Appeals disagreed. In their decision they held: "[T]he disparate recoupment to which petitioners point need not be found offensive to the Constitutions. For, '[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis”, it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality.” ’ ” (Matter of Davis, 57 NY2d 382, 388 [citations omitted].)
In 1987 in Matter of McGee v Korman (70 NY2d 225), the Court of Appeals once again had the opportunity to analyze under what circumstances courts should engage in declaring statutes violative of the Constitution. In that decision the Court of Appeals reversed the Appellate Division of the Supreme Court, First Department, which had declared a section of the Election Law unconstitutional. In speaking of when *16 courts should engage in declaring acts of the Legislature unconstitutional, the Court of Appeals stated the following (at 231):
"Enactments of the Legislature — a coequal branch of government — may not casually be set aside by the judiciary. The applicable legal principles for finding invalidity are firmly embedded in the law: statutes are presumed constitutional; while the presumption is rebuttable, invalidity must be demonstrated beyond a reasonable doubt (Wiggins v Town of Somers, 4 NY2d 215, 218-219). Where a statute is challenged as irrational or arbitrary, a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack (Maresca v Cuomo, 64 NY2d 242, 251). The drastic step of striking a statute as unconstitutional is to be taken only as a last resort (Wiggins v Town of Somers, 4 NY2d 215, supra).
"A determination of invalidity — with ramifications beyond the parties and their immediate dispute — necessarily must be founded upon an adequate record, the parties having properly raised their contentions and presented their proof in the lower courts. Also important to the procedure for challenging the constitutionality of a State statute is notification to the Attorney-General (see, Executive Law § 71; CPLR 1012). This opportunity for participation by the State’s chief legal officer insures that all of the people of the State may be represented when the constitutionality of their laws is put in issue. Notice to the Attorney-General serves the additional function of ensuring the development of an adequate record upon which the court may base its determination.”
There are several reasons why the determination of the Hearing Examiner should be reversed. Arguments can be made as to the rationality of the statutory scheme enacted by the New York State Legislature. Although no adequate record was made at the hearing held below, this court does not believe that any discrimination violative of the Constitution occurred with regard to the distinction made between children who are in receipt of public assistance benefits and those who are not. By mandating the retroactivity of support in situations where individuals are in receipt of public assistance, the State has taken a measure to protect the public purse by providing for recoupment of funds from persons legally responsible for those children. They are not advantaged nor disadvantaged with regard to other children who are not in receipt of public assistance, in fact they are unaffected by this *17 statute since the reimbursement herein obtained from the parent is paid to the Commissioner of Social Services to recoup for monies paid to the child. In fact, in connection with the receipt of the benefits, child support rights are assigned to the local Commissioner (see, Social Services Law § 348 [2]). Consequently, the children are not treated differently.
The statute does treat differently persons who are responsible for paying child support in that those who have children who have applied for public assistance benefits must be ordered to pay support retroactive to the date that eligibility for those benefits was first established, while those whose children did not apply for public assistance may, or may not, have their order of support made retroactive to a date preceding the filing of the petition (see, Family Ct Act § 545 [2], which permits, but does not mandate, retroactivity to the date of birth of the child). However, it is impossible for this court to conclude, as did the Hearing Examiner, that this distinction is one totally without rationality. Surely, a thorough analysis of the legislative history and a complete review of the statutory framework would be necessary before such a determination could be entered.
Hearing Examiners and courts of inferior jurisdiction should be very circumspect before making a determination that a statute is unconstitutional. The statute herein is not clearly and unequivocally violative of the Constitution and arguments can be advanced to support the rationality of the enactment. The Court of Appeals of the State of New York has stated the view that statutes should not be declared unconstitutional unless the consequences may be severe and the damage is irreparable or where the conclusion is inescapable. Neither of those situations exist in the instant case and, therefore, no declaration of unconstitutionality should have been entertained by the Hearing Examiner. Her determination is reversed.
The objector seeks to have arrears set by the court retroactive to 1984 when the petitioner first went on public assistance. The facts herein indicate that the petitioner went on and off public assistance several times with her last application for public assistance being from September 18, 1991 to January 29, 1993. The court understands the statutory language in section 545 (1) of the Family Court Act to require retroactivity to the date of the last receipt of public assistance benefits, not prior thereto. The statutory language reads “the order shall be effective as of the earlier of the date of the *18 application for an order of filiation, or, if the children for whom support is sought are in receipt of public assistance, the date for which their eligibility for public assistance was effective.” It appears to this court that what the Legislature has enacted is a statute which requires that the court award support for children who are in receipt of public assistance retroactive to the date for which the eligibility for the public assistance they are then receiving was effective. This would not include prior periods of public assistance that may have occurred many years before. Therefore, the court directs that the determination of the Hearing Examiner be modified by requiring child support to be retroactive to September 18, 1991 which was the last date that petitioner’s eligibility for public assistance was effective prior to the filing of the paternity petition herein on February 13, 1992. The petitioner’s counsel is directed to submit an order in accordance with this determination.
The court has considered the other contentions raised on the objections and they are denied.