**Joseph DALZIN, et al., Plaintiffs,**

**v.**

**Kimberly BELSHE, in her official capacity as Director of the California Department of Health Services, et al., Defendants.**

**No. C 97–0072 VRW.**

United States District Court,
N.D. California.

Nov. 14, 1997.

As Amended March 2, 1998.

Amitai Schwartz, Antonio Ponvert, III, Amitai Schwartz Law Offices, San Francisco, CA, for plaintiffs.

Beverly R. Meyers, Deputy Atty. General, San Francisco, CA, for defendants.

## ORDER

WALKER, District Judge.

Plaintiffs bring this action seeking a declaration that California's "proportionate share" system for the recovery of Medi–Cal funds violates federal law. Plaintiffs also seek an injunction enjoining the defendants from enforcing this system against them. Currently pending before the court are the parties' cross motions for summary judgment and plaintiffs' motion for a permanent injunction against the enforcement of the law. For the following reasons, plaintiffs' motions will be granted, and defendants' motion will be denied.

### I

The facts of this case are undisputed. California participates in the Medicaid program, a program through which the federal government provides funding to participating states so they can in turn provide medical assistance to eligible low-income persons. Through its power to raise and spend revenue, Congress has imposed several restrictions on the ways in which the states can manage these programs.

Federal law generally allows states to seek reimbursement from a person's estate for medical assistance provided to the decedent while he was alive. In some situations, however, the states cannot seek such reimbursement. Specifically, 42 USC § 1396p(b)(2) provides that any effort by the state to seek reimbursement from an individual's estate:

(1) may be made only after the death of the individual's [the decedent's] surviving spouse, if any, and only at a time—(A) when he [the decedent] has no surviving child who is under age 21, or (with respect to states eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title.

California's Medicaid program is called Medi–Cal, and it is administered by the defendants, officials of the California Department of Health Services. California is eligible to participate in the state program referenced in the statute, and these federal restrictions govern the Medi–Cal program.

California law generally permits the state to recover Medi–Cal expenses from the estates of people who received these benefits during their lives. In an effort to comply with the federal restrictions contained in 42 USC § 1396p(b)(2), the California legislature has limited the state's ability to recover from an estate in which the decedent is survived either by a spouse or by a child who is under 21, blind or disabled. See CalWelf and InstCode § 14009.5(b)(3); 22 CalCode Regs § 50961(d). These laws, however, do not completely bar the state from seeking recovery from such estates. The laws only prevent the state from recovering the "proportionate share" of the estate left to the surviving spouse or disabled child. The laws therefore allow the state to seek recovery from the portion of the estate devised to surviving children who are not under 21, blind or disabled. See id.

In November 1994, Lethea Larsen died leaving her entire estate in equal shares to her two sons, Paul Smith and Joseph Dalzin. Joseph Dalzin suffers from mental retardation and is disabled within the meaning of 42 USC § 1396p(b)(2). In February 1995, the state of California filed a creditor's claim against the Larsen estate for recovery of Medi–Cal benefits paid to Larsen during her lifetime. The state waived any claim it may have had to Dalzin's inheritance, but under the "proportionate share" scheme, the state pursued its claim against Smith and his share of the estate.

Similarly, in August, 1995, Jane Longshore died leaving her entire estate in equal shares to her children, Camila Tausworthe, Shirley Herz, Jude Nichols, and Wells Longshore. Nichols and Wells Longshore suffer from multiple sclerosis and are disabled within the meaning of 42 USC § 1396p(b)(2). In May, 1996, the state waived its claims against Nichols and Wells Longshore but sought recovery from the portion of the estate devised to Tausworthe and Herz.

On July 19, 1995, Richard Chambers, the acting Associate Regional Administrator for

the federal Medicaid Program, advised the state of California that its "proportionate share" system conflicted with federal law.

## II

■ It is well settled that "State regulations which are inconsistent with federal law are invalid under the Supremacy Clause." *Lewis v. Hegstrom,* 767 F.2d 1371, 1375 (9th Cir.1985). When "an act of Congress, fairly interpreted, is in actual conflict with the law of State," the state law must yield. *Savage v. Jones,* 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182 (1912). Because California has chosen to participate in the federal Medicaid program, it must administer the Medi–Cal program in a manner consistent with federal law. See *Bucholtz v. Belshe,* 114 F.3d 923, 925 (9th Cir.1997).

Given this legal setting, the parties agree that the single issue presented by this case is whether California's "proportionate share" system is consistent with federal law. FRCP 56(c) provides for the granting of summary judgment if the moving party is entitled to judgment as a matter of law. It is axiomatic that questions of statutory interpretation are questions of law. See *Jeldness v. Pearce,* 30 F.3d 1220, 1222 (9th Cir.1994). Summary judgment is therefore the appropriate means for resolving this case.

## III

■ "The starting point in statutory interpretation is the language of the statute itself." *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); see also *Bucholtz,* 114 F.3d at 925. In this case, the applicable federal provision is clear: states participating in the federal Medicaid program may only seek recovery from the decedent's estate "at a time when he has no surviving child who is under age 21, *** blind or disabled." Both decedents in this case, Lethea Larsen and Jane Longshore, have surviving children who are disabled. The state therefore may not seek recovery from their estates.

If Congress had wanted states to have the option to* establish a "proportionate share" system, it could have easily done so. For example, if the law simply provided that "states cannot maintain claims for recovery against the portion of the estate devised to the decedent's surviving spouse or surviving minor, blind or disabled children," a "proportionate share" system may be permissible. But this is not what the law says. The court simply cannot rule that Congress did not mean for the law to read as written, but instead intended an alternate meaning that Congress could have easily expressed in other terms. Even though a "proportionate share" system may be perfectly reasonable, and may arguably be better than the system Congress chose, that choice nevertheless is up to Congress, not the courts.

In the event that a statute is unclear or ambiguous, courts may look for guidance on interpretation to the agency charged with implementing the law. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). So, even if the statute in question in this case were unclear or ambiguous, which of course it is not, the court would still find the relevant federal regulations and the Chambers letter persuasive. The Department of Health and Human Services (DHHS) is charged with administering the federal Medicaid program, and it has advised the state that the "proportionate share" system conflicts with federal law. Furthermore, DHHS has adopted regulations that mirror the plain language of the statute. See DHHS State Medicaid Manual § 3810(A)(4).

Defendants spend a great deal of energy arguing that the federal law was designed to protect disabled children, not their able siblings. Defendants contend that if the court applies the law as it is clearly written, such siblings will receive money that the state could otherwise reinvest in the Medi–Cal program. Defendants further contend that such "windfalls" contravene the general purpose of the Medicaid Act.

These arguments are better made by the state's lobbyists in Washington than by its lawyers in San Francisco. It is the job of Congress to make the laws and the job of the courts to apply them. In this case, the court declines the state's invitation to transcend

the court's constitutionally circumscribed job description.

In addition to making policy arguments, the defendants rely heavily on a New York state court case which held that a similar "proportionate share" system did not run afoul of federal law. In *In the Matter of Samuelson*, 493 N.Y.S.2d 784, 789, 110 A.D.2d 187, 193 (1985), a state appeals court ruled that the state was not barred from seeking recovery from the decedent's sole heir, her son, even though her blind and disabled daughter was still alive. The court concluded that the state could seek recovery from the son because doing so would not contradict the purpose of the federal law. See id.

Because this case is not binding, the court chooses not to follow it for several reasons. First, Congress is better situated to explain its own intentions through plain statutory language than is a state appellate court. Second, "it is inappropriate for a court to invoke the 'broad purpose' of a statute to invalidate specific provisions." *Transcon Lines v. Sterling Press*, 58 F.3d 1432, 1437 (9th Cir.1995). Third, at least two New York courts that have since looked at the issue have declined to follow *Samuelson*. See *In the Matter of Andrews*, 650 N.Y.S.2d 470, 471, 234 A.D.2d 692 (1996); *In the Matter of Burstein*, 611 N.Y.S.2d 739, 740, 160 Misc.2d 900 (1994). Fourth, unlike the situation in *Samuelson* in which there was no immediate need for the brother to care for his disabled sister, the facts of this case indicate that Dalzin is in the direct care of Smith.

Furthermore, it is not, as the defendants imply, inconceivable that Congress intended the statute to read as it was actually written, passed and signed. In fact, there are least three reasons why Congress may have crafted the law the way it is. First, one need not look further than the facts of this case to realize that sheltering the siblings of disabled people from recovery claims will, in many instances, benefit the disabled heirs as well. Smith, as the court imagines many siblings would, is taking care of his disabled brother Dalzin. Obviously, a rule that protects Smith's assets is likely to allow him, at least to some degree, to take better care of Dalzin.

In fact, it appears from the facts that such a rule will allow the pair to remain in their home.

The defendants claim that the "hardship" provisions in the state law address some of these situations. The notion that the state's hardship provisions somehow obviate the need to follow the clear language of 42 USC 1396p(b)(2) is, however, belied by the fact that the federal law itself directs states to provide for such hardship provisions as well. See 42 USC 1396p(b)(3). It is therefore clear that Congress intended the hardship provisions to supplement the clear meaning of 42 USC 1396p(b)(2), not replace it.

Second, in other situations, the court imagines that a parent may be unwilling to leave a sizeable portion of his estate to a disabled child, especially a child with a severe mental disability or other condition that may render that child financially irresponsible. A parent may instead choose to leave the estate to a more responsible child so that he could then take care of his disabled sibling. Under a "proportionate share" system, however, there is a disincentive against such arrangements because the state could file a recovery claim against the entire estate even though it would be used, in part, to benefit the disabled child. Congress may have written the law as it is in order to prevent states from imposing this disincentive.

Of course, a parent may be able to circumvent this disincentive through the use of a trust fund, but as the facts of *Samuelson* demonstrate, some parents may have neither a keen understanding of probate law nor the resources to obtain competent legal help. See *Samuelson*, 493 N.Y.S.2d at 789 (mother attempted to express her testamentary intent through precatory and therefore unenforceable language); see also 42 USC 1396p(d) (governing trusts in this same context).

Third, in certain situations, it might not be possible to separate the inheritance of various heirs until after the state's recovery claim has been paid. For example, in California, the intent of the testator as expressed in a will controls the legal effect of dispositions made within the will. See CalProb-

Code § 6140(a). When an estate is insufficient to cover both its devises and its debts, some of the devises must be abated. See 12 Witkin, *Summary of California Law* § 622. If the testator provides, as Jane Longshore did, that abatement is to occur before the equal division of the estate, then any claim by the state for recovery will necessarily reduce the inheritance of all heirs, including the disabled children. This runs counter to the purpose of the federal law.

## IV

For the foregoing reasons, the court:

(1) GRANTS plaintiffs' motion for summary judgment (Doc # 14, Pt# 1);

(2) GRANTS plaintiffs' motion for permanent injunction enjoining the defendants from enforcing California's "proportionate share" system against them (Doc # 14, Pt # 2); and

(3) DENIES the defendants' motion for summary judgment (Doc # 21, Pt # 1).

IT IS SO ORDERED.

## JUDGMENT

In accordance with this court's order of November 14, 1997, plaintiffs' motion for summary judgment is GRANTED; plaintiffs' motion for permanent injunction enjoining defendants from enforcing California's "proportionate share" system against them is GRANTED; and defendants' motion for summary judgment is DENIED.